CASA FORD, INC. and North River Insurance Company, and Casa Ford, Inc. and Western Alliance Insurance Company, Appellants,

v.

FORD MOTOR COMPANY, Appellee.

No. 06–96–00094–CV.

Court of Appeals of Texas, Texarkana.

Argued July 24, 1997.

Decided Aug. 15, 1997.

Rehearing Overruled Oct. 7, 1997.

Jimmy Williamson, Houston, for Appellants, North River & Casa Ford.

Nicholas E. Zito, Livingston, Markle, Miller, Ramos, Houston, Randall D. Wilkins, Hennessy, Gardner, Barth, Houston, for Appellants, Western Alliance & Casa Ford.

Michael S. Goldberg, Jacalyn A. Hollabaugh, Michael L. Calhoon, Claudia Wilson Frost, Baker & Botts, Houston, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Casa Ford, Inc. ("Casa"), North River Insurance Company ("North River"), and Western Alliance Insurance Company ("Western Alliance") appeal a judgment in favor of the defendant-appellee, Ford Motor Company. The appellants brought several claims against the appellee, seeking indemnity or contribution for a judgment against Casa. The trial court denied one of the claims after a bench trial and denied the other claims on summary judgment. The appellants bring several points of error, and the appellee brings several cross-points. We reverse and remand the trial court's judgment denying the appellants' claim for indemnity under the common law, but affirm the judgment in all other respects.

On the morning of July 16, 1988, Juan Sandigo was a passenger in a 1984 Ford Mustang owned and driven by Francisco Sodari. Sodari fell asleep at the wheel, causing the car to run off the road, collide with an abutment, and roll over. Because his shoulder harness failed, Sandigo incurred grievous injuries, including paraplegia and the loss of an eye.

Sodari's Mustang had seen many owners. In late 1983, Ford sold the Mustang to Richardson Ford in New Mexico. It passed through several owners before Casa, an El Paso dealership that sold new Ford vehicles and used vehicles, purchased it at a wholesale auction on November 16, 1986. Casa sold the vehicle wholesale to another dealer on February 12, 1987. The car then passed through several more owners before Alexander Ford in Arizona sold it to Sodari in June 1988. On July 5, 1990, Sandigo sued Casa, Alexander Ford, and Tate Motor Company, which purchased the Sodari vehicle from Casa. Sandigo's petition, which was filed in the El Paso District Court, alleged that the defendants misrepresented the condition of the car, breached warranties, and negligently marketed the car. The petition also invoked strict liability, alleging that "[t]he Ford Mus-

tang was defective and unsafe for its intended purposes at the time it was sold. In particular, the Ford Mustang was defectively manufactured, designed and marketed." Casa eventually became the only defendant in the El Paso suit, while Sandigo maintained a separate action in Arizona against other dealerships. Sandigo did not sue Ford, and the statute of limitations ran on any claims by Sandigo against Ford.

The parties in *Sandigo v. Casa Ford* proceeded under the assumption that the failed seat belt was not original Ford equipment-in other words, that someone other than Ford had modified the seat belt. However, in May or June 1992, Casa discovered that the seat belt was original Ford equipment. Sodari's Mustang had been subject to a recall shortly after it was manufactured in 1983. It was one of 600,000 cars that Ford had manufactured with defective seat belts. A test collision showed that a defective bolt caused these seat belts to fail in a thirty-five-mile-per-hour collision. Ford sent many notices to its dealers and customers, with the hope that the subject vehicles would be brought in for seat belt repairs.

When a Ford vehicle came through a Ford dealership, the dealership had the opportunity to check whether all recalls had been performed on the vehicle. The dealership could make such a determination by inputting the vehicle identification number into one of Ford's automated vehicle tracking services. The first system-CARES-was operated by toll-free long-distance telephone, and the second system-OASIS-was operated by computer. Because of these systems, since 1978 every Ford dealership has had the ability to check any vehicle identification number for open recalls. Because Ford paid the dealerships for recall work, the dealerships had a financial incentive to use the CARES and OASIS systems. Despite these protections, the seat belt on Sodari's Mustang was never repaired.

On July 6, 1992, Casa first notified Ford of the El Paso lawsuit and requested that Ford indemnify Casa. At that point, virtually all discovery was complete, and the case was set for trial on August 31, 1992. On August 28, 1992, Victor Poulos, Casa's attorney, first met with Ford attorneys and gave them background information on the case. Meanwhile, the case was reset to November 4, 1992, then to February 9, 1993. Ford did not enter the case and eventually was barred from intervening. Additionally, Ford refused to indemnify Casa.

In October 1992, Casa and Sandigo made a deal that narrowed the focus of the El Paso suit. Casa admitted that the shoulder harness was defective and unreasonably dangerous and proximately caused Sandigo's injuries. Casa also stipulated that the issue of Sandigo's and Sodari's comparative responsibility would not be submitted. In return, Sandigo agreed to proceed only on the product liability claim, not his claim that Casa was independently negligent, and to waive any claim for punitive damages. As a result, the Sandigo trial concerned only damages. After a bench trial, the El Paso court rendered a judgment that Sandigo recover $8,762,313.00 from Casa.

On November 23, 1993, Casa and North River (Casa's excess liability insurer) filed this suit against Western Alliance (Casa's primary liability insurer) and Ford. North River and Casa sought indemnity and contribution from Ford and asserted DTPA, fraud, negligent misrepresentation, breach of contract, negligence, bad faith, and statutory violation claims against Western Alliance. The appellants eventually pleaded five bases for indemnity or contribution from Ford. First, they argued that Ford had a duty to indemnify under TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 1997), which requires a manufacturer to indemnify a seller in certain product liability situations. Second, they argued that they were entitled to reimbursement under TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(11) (recodified unchanged at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(11) (Vernon Supp.1997)), which provides that an automobile manufacturer must reimburse an automobile dealer for certain losses incurred as a result of a product liability action. Next, the appellants sought common-law indemnity or common-law contribution. Finally, they argued that they were entitled to contribution under Chapter 33 of the Texas Civil Practice and Remedies Code.

On October 17, 1994, the trial court severed the claims against Ford from the claims against Western Alliance. On June 16, 1995, Western Alliance filed a cross-action against Ford, seeking indemnity and contribution and seeking recovery "based upon FORD MOTOR COMPANY'S breach of statutory duties, breach of common law duties, FORD MOTOR COMPANY'S liability under strict liability in tort, and based upon FORD MOTOR COMPANY'S negligence and breaches of warranty...."[1] On July 24, 1995, Casa and North River filed a motion for summary judgment on the grounds that they had conclusively established a right to indemnity under Section 82.002, Article 4413(36), and the common law. Western Alliance subsequently filed a motion for summary judgment adopting and incorporating for all purposes the summary judgment motion filed by Casa and North River.

On October 2, 1995, the trial court granted Casa and North River a partial summary judgment. The court determined that Section 82.002 was applicable to Casa and North River's cause of action and that Casa was not negligent for failing to discover the seat belt defect. However, the court declined to grant summary judgment on any claim that Casa was not negligent for failing to comply with the recall.

On October 27, 1995, Ford filed a motion for summary judgment, asserting that Casa and North River were not entitled to indemnity or contribution for the following reasons:

- The appellants waived their contribution claims by failing to bring Ford into the El Paso suit. In other words, Chapter 33 requires that a contribution claim be brought in the original lawsuit.
- The appellants waived their Chapter 33 contribution claim by failing to submit the percentages of responsibility of Sandigo and Sodari in the El Paso case.
- The appellants could not obtain contribution under Chapter 33 from Ford because Ford had settled with Sandigo.

- There is no common-law right to contribution.
- The appellants were not entitled to indemnity because Casa was negligent as a matter of law.
- The appellants could not rely on Section 82.002 because the *Sandigo* suit was filed before the effective date of Section 82.002.
- The appellants could not rely on Article 4413(36) because it only applies to new vehicles.

On November 20, 1995, the trial court denied Ford's motion for summary judgment.

On December 5–6, 1995, the court held a nonjury trial on the Section 82.002 claims. On December 29, 1995, the trial court issued findings of fact and conclusions of law. The court noted that "[t]here are several reasons for construing [Section 82.002] to apply only to product liability actions filed after September 1, 1993." However, the court opted to apply Section 82.002 for reasons of "judicial economy." The court concluded that Section 82.002 permitted a court to award indemnity even to a negligent retailer. The court determined that "the comparative fault, negligence, and causation between Ford and Casa Ford under § 82.002 is 80% for Ford and all others ... and 20% for Casa Ford." The court also determined that "[i]n the subsequent trial under § 33.001 or Art. 4413(36), the comparative fault, negligence, and causation between Ford and Casa Ford is 67% for Casa Ford and 33% for Ford." The court concluded that Casa was negligent because it failed to perform the recall and that Casa was not entitled to recover under Section 82.002 because it did not give Ford "reasonable notice" of the El Paso suit.

The trial court's actions spurred a new round of motions. Ford filed a new motion for summary judgment. In addition to the grounds urged in its previous motion for summary judgment, Ford argued that it was entitled to summary judgment on the Article 4413(36) claim because Casa did not give

---

1. On appeal, none of the parties brings up these "kitchen sink" allegations by Western Alliance. We conclude that the trial court's summary judgment properly denies these claims because Ford's summary judgment motion includes a footnote that states, "Ford is moving for summary judgment on all claims brought by Casa Ford and its insurance companies through Casa Ford."

Ford reasonable notice of the Sandigo suit and public policy precludes indemnity when the seller and purchaser collude to defraud the manufacturer. North River filed a lengthy motion that re-urged all previously asserted grounds for summary judgment and moved for a favorable judgment upon the findings of fact and conclusions of law. Western Alliance moved for summary judgment by incorporating yet another North River summary judgment motion that re-urged North River's grounds for summary judgment and alternatively sought summary judgment for eighty percent of North River's damages under Article 4413(36).

On May 3, 1996, the trial court granted Ford's motion for summary judgment. On June 24, 1996, the trial court signed a final judgment, which denied Western Alliance's and North River's motions for summary judgment, granted Ford's motion for summary judgment with respect to all issues not previously determined in the findings of fact and conclusions of law, and incorporated the findings of fact and conclusions of law.

North River and Western Alliance both purport to appeal on behalf of Casa. Casa does not bring its own appeal. Casa had independent counsel that participated in some of the trial proceedings, but only because Ford had asserted a counterclaim against Casa. Casa admitted that it had no financial stake as a plaintiff in the case. Therefore, Casa's only role in this appeal is as a subrogor. North River and Western Alliance have filed separate briefs, but their interests are virtually identical. Therefore, the alignment of the parties is fairly simple: North River and Western Alliance, as Casa's insurers, appeal a judgment in favor of Ford.

The briefs raise errors related to six groups of issues, which we will address in this order: (1) Section 82.002, (2) Article 4413(36), (3) common-law indemnity, (4) contribution, (5) denial of the appellants' motions for summary judgment, and (6) attorney's fees.

## I.

### Section 82.002

■ Tex. Civ. Prac. & Rem.Code Ann. § 82.002 provides, in part:

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

. . . .

(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

We need only address Ford's first cross-point, which contends that "[t]he trial court erred in determining that ... section 82.002 ... applies in this case." Because we conclude that the trial court erroneously applied Section 82.002 to this case, we need not address other issues related to Section 82.002. Because Section 82.002 does not provide a basis for indemnity in this case, we affirm the trial court's judgment denying the appellants' claim for indemnity.

The enabling clause of Section 82.002 provides that "Sections 82.002 through 82.004 ... apply only to a cause of action commenced on or after the effective date of this Act [September 1, 1993]." Act of February 24, 1993, 73rd Leg., R.S., ch. 5, §§ 3(a), 4, 1993 Tex. Gen. Laws 13, 15. Sandigo's cause of action was commenced before September 1, 1993, while the appellants' cause of action was commenced after September 1, 1993. The trial court's findings of fact and conclusions of law state that it is "unclear which action must be filed after the statute's effective date," but that "[t]here are several reasons for construing the statute to apply only to product liability actions filed after September 1, 1993." Nevertheless, the trial court applied Section 82.002 for reasons of "judicial economy."

■ Ford notes that in construing the meaning of "cause of action" in the enabling clause, we should look to the meaning of "cause of action" in other parts of the Act. *L

& M–Surco Mfg., Inc. v. Winn Tile Co., 580 S.W.2d 920, 926 (Tex.Civ.App.—Tyler 1979, writ dism'd). In three places, Section 82.002 uses the term "action" to refer to a product liability action. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a), (e)(1), (f). Therefore, Ford argues that we must conclude that the phrase "cause of action" in the enabling clause refers to the product liability action. However, "the meaning of [a term] in the different sections of the statute must be considered in the different contexts in which the word is found in the separate sections." Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 435 (1949). Therefore, we cannot automatically conclude that "cause of action" has the same meaning in the enabling clause as it does in the substantive portions of Section 82.002. Instead, we conclude that "cause of action" means "product liability cause of action" because the trial court's interpretation yields odd results and results in retroactive application of the statute.

The enabling clause in question also applies to TEX. CIV. PRAC. & REM.CODE ANN. § 82.004 (Vernon 1997). Section 82.004 sets forth certain situations in which a manufacturer or seller is not liable for products liability. Section 82.004 does not concern indemnity of the seller by the manufacturer. Therefore, if we interpret "cause of action" to mean "a seller's cause of action against a manufacturer," we render the enabling clause a nullity in reference to Section 82.004. Instead, we should presume that the enabling clause is effective as to both Sections 82.002 and 82.004. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1988). The trial court's interpretation impermissibly concludes that the Legislature enacted a statute with no effect on one of its expressly intended subjects.

The trial court's interpretation also results in a retroactive application of the statute. The retroactive application of Section 82.002 required the parties to be seers. For example, to take advantage of Section 82.002, Casa's counsel had to give "reasonable notice" to Ford, even though the statute requiring reasonable notice had not yet been passed.

■ TEX. CONST. art. I, § 16 provides that the Legislature shall not pass a retroactive law. A statute is retroactive if "it impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or adopts a new disability with respect to transactions already passed." Durish v. Texas State Bd. of Ins., 817 S.W.2d 764, 766 (Tex.App.—Texarkana 1991, no writ). The trial court's interpretation of Section 82.002 would impose all the rights and obligations of a statutory indemnity scheme on products liability cases commenced (and, in this case, completed) before the effective date of the statute. "The general rule is that there exists a presumption that an act is intended to operate prospectively and not retroactively. If there is any doubt, the intention will be resolved against retrospective operation of a statute." Ex parte Abell, 613 S.W.2d 255, 258 (Tex.1981). Therefore, we cannot conclude that Section 82.002 should be interpreted to apply retroactively.

North River argues that if the Legislature intended to apply Section 82.002 to product liability causes of action commenced on or after September 1, 1993, it would have used the term "product liability cause of action" instead of the term "cause of action." This argument proves nothing. One can just as easily argue that if the Legislature intended to apply Section 82.002 to indemnity causes of action commenced on or after September 1, 1993, it would have used the term "indemnity cause of action."

North River also points out that "the legislature clearly understood the distinction between making law applicable upon 'commencement of an action' as opposed to when a 'cause of action accrues.'" North River does not point out how this observation supports its argument.

Because Section 82.002 was not effective at the time that the Sandigo suit was filed, the appellants are not entitled to indemnity from Ford based on Section 82.002. Therefore, we affirm the trial court's judgment denying recovery under Section 82.002.

## II.

### Article 4413(36), § 5.02(b)(11)

■ TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(11) provides, in part:

Notwithstanding the terms of a franchise agreement or provision of law in conflict with this section, the dealer's delivery, preparation, and warranty obligations as filed with the Commission shall constitute the dealer's sole responsibility for product liability as between the dealer and manufacturer or distributor, and, except for a loss caused by the dealer's failure to adhere to these obligations, a loss caused by the dealer's negligence or intentional misconduct, or a loss caused by the dealer's modification of a product without manufacturer or distributor authorization, the manufacturer or distributor shall reimburse the dealer for all loss incurred by the dealer, including legal fees, court costs, and damages, as a result of the dealer having been named a party in a product liability action.

Ford's motion for summary judgment presented four grounds for summary judgment against the appellants' claim for indemnity under Article 4413(36):(1) Article 4413(36) does not apply to the sale of used cars; (2) Article 4413(36) is an indemnity statute that precludes recovery when a dealer is independently liable; since the trial court concluded that Casa was negligent, Casa is precluded from recovering under Article 4413(36); (3) Casa is not entitled to recovery because it did not give reasonable notice of the Sandigo lawsuit; and (4) public policy precludes recovery under Article 4413(36) because Casa and Sandigo colluded to defraud Ford.

Ford has the burden of showing this Court that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). In granting summary judgment, the trial court did not limit its ruling to any of the grounds urged by the appellee. Therefore, we must affirm the summary judgment if any of Ford's grounds is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Because we conclude that Article 4413(36), § 5.02(b)(11) does not apply to the sale of used cars, we affirm the summary judgment and decline to address Ford's other grounds for summary judgment.

■ Ford contends that TEX.REV.CIV. STAT. ANN. art. 4413(36), the Motor Vehicle Commission Code, does not apply to the sale of used cars. Ford argues that because Casa's liability is based upon the sale of a used car, the appellants are not entitled to indemnity under the Motor Vehicle Commission Code. The appellants note that Article 4413(36) never explicitly states that it applies only to sales of new cars. However, when applying a statute, our job is to effectuate the Legislature's intent. *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex.1996). All indications are that the Legislature intended Article 4413(36) to apply only to the sale of new cars.

To begin with, the "Policy and Purpose" of Article 4413(36) applies only to new cars:

The distribution and sale of *new motor vehicles* in this State vitally affects the general economy of the State and the public interest and welfare of its citizens. It is the policy of this State and the purpose of this Act to exercise the State's police power to insure a sound system of distributing and selling *new motor vehicles* through licensing and regulating manufacturers, distributors, converters, and dealers of those vehicles, and enforcing this Act as to other persons, in order to provide for compliance with manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens.

Act of May 20, 1987, 70th Leg., R.S., ch. 357, § 1, 1987 Tex. Gen. Laws 1781, 1781–82 (emphasis added). The only dealers covered by the Act are ones that sell new vehicles. Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 1, 1989 Tex. Gen. Laws 4653, 4654. Section 3.01(b) provides that "all aspects of the distribution and sale of *new motor vehicles* shall be governed exclusively by the provisions of this Act." Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 9, 1989 Tex. Gen. Laws 4653, 4658 (emphasis added). Several other sections of the Act explicitly apply only to new motor vehicles. Furthermore, the enabling clause for Section 6.07 states that the section applies only to new motor vehicles. Act of May 23, 1983, 68th Leg., R.S., ch. 651, § 8, 1983 Tex. Gen. Laws 4134, 4146.

The rather lengthy Act never mentions used vehicles. Additionally, a Texas Attorney General opinion assumes that the Act applies only to new vehicles. Op. Tex. Att'y Gen. No. JM–721 (1987). In short, the appellants request that we construe TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(11) to be anomalous from the rest of the Motor Vehicle Commission Code. Such a construction would not be warranted:

> In determining legislative intent, we must look to the entire statute, not just to any one phrase, clause, or sentence of that statute. Further, one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone.

*Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex. 1978).

The appellants argue that Casa is entitled to reimbursement as a new car dealer under Article 4413(36) because the trial court in the instant case determined that Casa was negligent for failure to perform a recall, a duty created because of Casa's status as a new car dealer. This argument is based on a false premise. Casa's duty to perform the recall did not arise from its status as a new car dealer. Instead, Casa's duty arose from its knowledge of the recall. RESTATEMENT (SECOND) OF TORTS § 401 (1965). Every used car dealer with knowledge of the recall would have the same duty.

In its reply brief, Western Alliance notes that Casa's dealership agreement with Ford contemplates that a new car dealership will often operate a used car program. Western Alliance argues that because a used car program is an integral part of a new car dealership, then a statute regulating new car dealers must necessarily regulate used car sales. This argument ignores the many indicia that Article 4413(36) was intended to regulate only new car sales. Western Alliance does not explain how an agreement between Casa and Ford can be construed to control the meaning of a statute.

Western Alliance also notes that the 1995 amendments to the Motor Vehicle Commission Code eliminate the two uses of the word "new" in Section 1.02, the "Policy and Purpose" section. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 1, 1995 Tex. Gen. Laws 2887, 2887. The word "new" was also eliminated in Sections 3.01(a), (b), 3.02(a), and 4.02(a). *Id.* at §§ 4, 5, 9, 1995 Tex. Gen. Laws at 2890–91. However, the Legislature left untouched most references to "new" vehicles. The elimination of the word "new" in some sections is open to varying interpretations. The Legislature may have determined that the word "new" was surplusage because it was otherwise apparent that the Act applied only to new vehicles. Regardless, the 1995 changes occurred long after the events establishing Casa's purported right to reimbursement. All in all, the evidence indicates that Article 4413(36) applies only to transactions involving new vehicles. Therefore, we affirm the summary judgment in favor of Ford on the appellants' indemnity claim based on TEX.REV.CIV. STAT. ANN. art. 4413(36), § 1.02.

### III.

### Common–Law Indemnity

■ Texas common law permits "a retailer or other member of the marketing chain to receive indemnity from the manufacturer of the defective product when the retailer or other member of the marketing chain is merely a conduit for the defective product and is not independently culpable." *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 432 (Tex.1984); *see Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819 (Tex. 1984). This doctrine continued to exist at least through the passage of Section 82.002. *See, e.g., Central Consol. v. Robertshaw Controls Co.,* 868 S.W.2d 910, 912 (Tex.App.—Beaumont 1994, writ denied); *LTV Energy Prods. Co. v. Chaparral Inspection Co.,* 827 S.W.2d 593, 595 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *USX Corp. v. Salinas,* 818 S.W.2d 473, 489 (Tex.App.—San Antonio 1991, writ denied). The appellants contend that they are entitled to indemnity under the common law. Ford sought summary judgment against the appellants' common-law claim on one ground: that Casa was not merely a conduit and was independently culpable. To that end, Ford argued that

Casa was negligent as a matter of law because it failed to perform the recall. We also note that the trial court found that Casa's damages were partly caused by its own negligence.

Ford's argument fails because even if Casa was negligent, that negligence had no bearing on its liability. The judgment against Casa was based on strict liability, not negligence. Casa was found liable for selling a defective product, a claim for which it was "merely a conduit" and not independently liable. Therefore, the trial court erred by adjudicating Casa's negligence.

Instead of focusing on Casa's negligence, the trial court and the parties should have focused on whether Casa was entitled to indemnity for the strict liability judgment against it. RESTATEMENT (SECOND) OF JUDGMENTS § 57 (1982) outlines when an indemnitor is precluded from contesting the liability of the indemnitee:

(1) Except as stated in Subsection (2), when one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee if:

(i) the indemnitor defended the action against the indemnitee; or

(ii) the indemnitee defended the action with due diligence and reasonable prudence.

(2) If there is a conflict of interest between the indemnitee and the indemnitor regarding the injured person's claim against the indemnitee, so that the indem-

nitor could not properly have assumed the defense of the indemnitee, a judgment for the injured person precludes the indemnitor only with respect to issues determined in that action as to which:

(a) there was no conflict of interest between the indemnitee and the indemnitor; and

(b) the indemnitee conducted a defense with due diligence and reasonable prudence.

(3) A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the scope of the indemnitor's obligation to indemnify and another of which is not.

The determination whether Ford must indemnify Casa is not affected by evidence of *possible* theories that Sandigo could have asserted against Casa. Instead, that determination is affected by issues such as reasonable notice, Ford's opportunity to assume the defense, and Casa's due diligence and reasonable prudence in defending the Sandigo claim. Because Ford did not move for summary judgment on any of these grounds, we reverse the summary judgment against the appellants' common-law indemnity claims.

## IV.

### Contribution

The appellants sought contribution under the common law and Chapter 33 of the Texas Civil Practices and Remedies Code, which concerns proportionate responsibility in tort cases. Some of the key provisions of Chapter 33 are set forth below: Section 33.011:

In this chapter:

(1) "Claimant" means a party seeking recovery of damages pursuant to the provisions of [Chapter 33], including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff seeking recovery of damages....

(2) "Defendant" includes any party from whom a claimant seeks recovery of damages pursuant to the provisions of [Chapter 33] at the time of the submission of the case to the trier of fact.

(3) "Liable defendant" means a defendant against whom a judgment can be entered for at least a portion of the damages awarded to the claimant.

. . . .

Section 33.016:

(a) In this section, "contribution defendant" means any defendant, counter-defendant, or third-party defendant from whom any party seeks contribution with respect to any portion of damages for which that party may be liable, but from whom the claimant seeks no relief at the time of submission.

(b) Each liable defendant is entitled to contribution from each person who is not a settling person and who is liable to the claimant for a percentage of responsibility but from whom the claimant seeks no relief at the time of submission. A party may assert this contribution right against any such person as a contribution defendant in the claimant's action.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.011, 33.016 (Vernon 1997).

 Ford moved for summary judgment against the Chapter 33 claim on three grounds:

- Chapter 33 requires that a contribution claim be brought in the original claimant's suit. Because the appellants did not bring their contribution claim in the Sandigo suit, they are now precluded from bringing it.

- The appellants are precluded from seeking contribution because they did not request a finding of Sandigo's and Sodari's negligence.

- The appellants cannot seek contribution against Ford because Ford settled with Sandigo.

Ford moved for summary judgment against the common-law claim on the ground that there is no common-law right to contribution in Texas. We affirm the summary judgment against the appellants' contribution claims because (1) Chapter 33 does not permit a tortfeasor subject to a judgment to bring a postjudgment contribution suit against a tortfeasor that was not a party to the primary suit, and (2) there is no common-law right to contribution in Texas.

The appellants note that Section 33.016(b) provides that a defendant "may assert" a contribution claim during the primary action. The appellants therefore argue that the statute permits, but does not require, that a contribution claim be asserted during the primary action. Ford agrees that Section 33.016(b) permits a party to seek contribution in the primary suit. However, Ford disagrees with Casa's deduction that because a party is permitted to seek contribution in the primary suit, it is also permitted to seek contribution after the primary suit. A case supporting Ford's viewpoint is *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 486–87 (Tex.1991). *Schroeder* examined a section of the Commission on Human Rights Act ("CHRA") which stated that "[a] person claiming to be aggrieved by an unlawful employment practice . . . *may* file" a complaint with the Human Rights Commission. *Id.* at 486. The appellant contended that this provision permitted, but did not require, a claimant under the Act to file its complaint with the Human Rights Commission before seeking judicial review. The Texas Supreme Court reviewed the context of the statute and rejected the appellant's argument, concluding that the statute was intended to permit a person to file a claim, but was not intended to permit a claimant to bypass the CHRA's administrative review procedures.

The parties also bandy about policy arguments concerning whether a party should be allowed to maintain a separate contribution action after judgment. Western Alliance argues that Section 33.016 should be liberally construed to permit recovery and that Ford's interpretation "would unreasonably eliminate or reduce contribution rights." In response, Ford argues that the appellants' interpretation would violate "Texas's strong public policy against multiple litigation of the same issues." For this proposition, Ford cites a dissenting opinion that concludes that Section 33.016 mandates the determination of contribution rights in the primary suit. *Union City Body Co. v. Ramirez*, 911 S.W.2d 196, 207–08 (Tex.App.—San Antonio 1995, no writ) (Duncan, J., dissenting).

The parties' arguments are interesting, but they fail to note that Chapter 33 explicitly does not grant a right to pursue a contribution claim against a nonparty after submission of the primary case to the trier of fact. Section 33.016(b) grants a right of contribution only to a "liable defendant." A liable defendant, as defined by Section 33.011(3), is "a defendant against whom a judgment can be entered for at least a portion of the damages awarded to the claimant." In other words, a liable defendant is not a party against which a judgment already has been entered in the primary suit. *See Pearce v. Vince Hagan Co.*, 834 S.W.2d 108, 109 (Tex. App.—Fort Worth 1992, writ denied) (holding that a party that settles with the claimant is not a liable defendant because it is not "a party against whom a judgment can be entered"). Furthermore, Section 33.016(b) grants the right of contribution only against "each person who is not a settling person and who is liable to the claimant for a percentage of responsibility." Because a party ceases to be a claimant once judgment is entered (Section 33.011(1)), no person can be said to be "liable to the claimant" once judgment is entered. Therefore, once judgment is entered, Section 33.016(b) grants contribution rights against nobody.

There is simply no basis for the appellants' contention that Chapter 33 authorizes a post-judgment contribution suit against a nonparty. After reviewing the history of Texas contribution law, we have concluded that neither Chapter 33 nor the common law permits the appellants to pursue a contribution claim against Ford.

"At common law, a party who had acted in concert with another to perpetrate a tort was not allowed contribution from his co-tortfeasor. The law did not favor wrongdoers and did not welcome suits to apportion the profits and losses derived from their wrongs." *Cypress Creek Util. Serv. Co. v. Muller*, 640 S.W.2d 860, 861–62 (Tex.1982) (citations omitted). However, "[i]n more recent times, since the development of rules imposing liability for negligence, liability for the acts of others and even liability without fault on the part of anyone, both courts and legislatures have intervened to shift the burden of loss from one tortfeasor to another, either wholly or partially." Gus M. Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 Tex. L.Rev. 150, 150 (1947).

In 1917, the Legislature passed Texas' first contribution statute, which provided:

> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his codefendant or codefendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons codefendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency.

Hodges, *Contribution and Indemnity*, at 151 n. 7. This statute survives to this day as TEX. CIV. PRAC. & REM.CODE §§ 32.001–.003 (Vernon 1997), the primary section of which provides that "[a] person against whom a judgment is rendered has, on payment of the judgment, a right of action to recover payment from each codefendant against whom judgment is also rendered." *Union Bus Lines v. Byrd*, 142 Tex. 257, 177 S.W.2d 774, 776 (1944), concluded that the statute did not mean what it said and permitted "a subsequent suit [for contribution] against a defendant who was not a party to the main suit." *See* Carl H. Judin, Jr., Comment, *Contribution: Joinder of Joint Tort–Feasors*, 4 BAYLOR L.REV. 57, 57–62 (1951) (criticizing *Union Bus Lines* ).

Because contribution in Texas was instituted by statute, not decisional law, *Cypress Creek*, 640 S.W.2d at 862, Texas courts declined to accept a common-law contribution cause of action. *Beech Aircraft Corp. v. Jin-*

*kins,* 698 S.W.2d 722, 725 (Tex.App.—Houston [1st Dist.] 1985) ("Except where authorized by statute, contribution between joint tortfeasors in tort cases has not been allowed."), *aff'd,* 739 S.W.2d 19 (Tex.1987); *Iowa Mfg. Co. v. Weisman Equip. Co.,* 667 S.W.2d 209, 211 (Tex.App.—Austin 1983, writ ref'd n.r.e.) ("There is no common law right to contribution among joint tortfeasors in Texas."); *Lubbock Mfg. Co. v. Perez,* 591 S.W.2d 907, 922 (Tex.Civ.App.—Waco 1979, writ dism'd by agr.) ("Contribution among joint tort-feasors did not exist at common law and it exists today in Texas only pursuant to statute.").[2] The common law, if embraced, likely would have permitted a postjudgment suit for contribution against a tortfeasor not a party to the original judgment. *See* RESTATEMENT (SECOND) OF TORTS § 886A cmt. i (1979) ("A separate action for contribution is also available, particularly against a tortfeasor who was not a party to the original action; . . . ."). However, because a common-law contribution scheme was not adopted, for several decades only the original contribution statute authorized such a suit.

In 1973, the Legislature adopted a comparative negligence statute. This statute governed contribution in pure negligence cases:

All claims for contribution between named defendants in the primary suit shall be determined in the primary suit, except that a named defendant may proceed against a person not a party to the primary suit who has not effected a settlement with the claimant.

Act of March 27, 1973, 63rd Leg., R.S., ch. 28, 1973 Tex. Gen. Laws 41, 42. This statute permitted a tortfeasor to bring a postjudgment contribution suit against a tortfeasor not subject to the judgment. *Haring v. Bay Rock Corp.,* 773 S.W.2d 676, 680–81 (Tex.App.—San Antonio 1989, no writ). A decade later, the Supreme Court adopted a common–law contribution scheme for products cases in which the recovery was based upon strict liability, breach of warranty, or mixed theories of strict liability and negligence. *Duncan,* 665 S.W.2d at 429. Finally,

in 1987, the Legislature adopted the current version of Chapter 33, which applies to most tort cases filed on or after September 2, 1987. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.02–2.11B, 1987 Tex. Gen. Laws 37, 40–44. The new version of Chapter 33 merged the old version of Chapter 33 with the *Duncan* contribution scheme. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 5 (Tex.1991).

Since 1987, the Texas Supreme Court twice has noted that there are only four sources of contribution rights in Texas: Section 32.002, the new Chapter 33, the old Chapter 33, and *Duncan. First Title Co. v. Garrett,* 860 S.W.2d 74, 78 n. 5. (Tex.1993); *Stewart Title,* 822 S.W.2d at 5. However, *Duncan* and the old version of Chapter 33 apply only to cases filed before September 2, 1987. *Stewart Title,* 822 S.W.2d at 5 (old Chapter 33); *Lewis & Lambert Metal Contractors, Inc. v. Jackson,* 914 S.W.2d 584, 591 (Tex.App.—Dallas 1994), *vacated by agr.,* 938 S.W.2d 716 (Tex.1997) (*Duncan* ); *Sisco v. Briones,* 809 S.W.2d 524, 526 (Tex.App.—San Antonio 1991, no writ). Section 32.002 applies only if the other contribution schemes do not apply. *Stewart Title,* 822 S.W.2d at 6. Because there is no common-law right to contribution, Chapter 33, which applies to strict liability cases, is the only possible source of the appellants' contribution claim. Because Chapter 33 does not permit a tortfeasor to seek postjudgment contribution from a tortfeasor that was not a party to the judgment, we affirm the trial court's granting of summary judgment against the appellants' contribution claims.

## V.

### The Appellants' Motions for Summary Judgment

 When a trial court grants a summary judgment, the losing party appeals, and an appellate court finds reversible error in the judgment, the appellate court's normal action is to reverse the trial court's judgment and remand the cause to

---

**2.** Some old cases do discuss "common law contribution," by which they usually mean "common law indemnity."

the trial court. An exception may occur when both parties moved for summary judgment and one such motion was granted, but the other denied. Then the appellate court should determine all questions presented, and may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant.

*Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988). The appellants urge us to reverse the trial court's denial of their motions for summary judgment. We decline this invitation because (1) the appellants have no contribution claims or claims for indemnity under Section 82.002 and Article 4413(36), and (2) the appellants have not conclusively proven that they are entitled to indemnity under the common law.

### VI.

#### Attorney's Fees

The appellants request that we award them attorney's fees. Because they are not otherwise entitled to recovery, we decline to award them attorney's fees.

The trial court's judgment denying the appellants' claim for indemnity under the common law is reversed and remanded. In all other respects, the judgment is affirmed.