**MEIER INFINITI COMPANY, Appellant,**

v.

**The MOTOR VEHICLE BOARD and The Motor Vehicle Division of the Texas Department of Transportation; Crest Infiniti, Inc.; and Nissan Motor Corporation in U.S.A., Appellees.**

No. 03–95–00063–CV.

Court of Appeals of Texas, Austin.

March 13, 1996.

Rehearing Overruled April 17, 1996.

---

J. Bruce Bennett, Baskin, Bennett & Komkov, L.L.P., Austin, William R. Crocker, Austin, for Appellant.

Howard V. Rose, Brown McCarroll & Oaks Hartline, Austin, for Crest Infiniti Company.

Dan Morales, Attorney General, Douglas Fraser, Assistant Attorney General, Natural Resources Division, Austin, for Motor Vehicle Board.

Lloyd E. Ferguson, Merritt N. Spencer, Strasburger & Price, L.L.P., Austin, for Infiniti Division, Nissan Motor.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

BEA ANN SMITH, Justice.

This Court's opinion dated December 20, 1995 is withdrawn, and we substitute the following opinion in its place.

Meier Infiniti Company ("Meier") appeals from a final order of the Motor Vehicle Board of the Texas Department of Transportation ("the Board") granting Crest Infiniti, Inc. ("Crest") a license to sell new Infiniti motor vehicles in Plano, Texas. *See* Tex. Gov't Code Ann. § 2001.176 (West 1995). Meier unsuccessfully protested Crest's application before the Board and now complains to this Court that the Board's final order is arbitrary and capricious, constitutes an abuse of discretion, and is the product of unlawful procedure and error of law. Infiniti Division, Nissan Motor Corporation ("Infiniti") intervened to support Crest's application. We will affirm the Board's decision to grant the license and to deny Meier's protest.

## BACKGROUND

In November 1990, Meier opened an Infiniti dealership to serve the north and northwest Dallas markets. Meier housed the dealership in an expensive single-line facility built to accommodate Infiniti's projection that the new dealership would have an annual sales volume of approximately 1270 new cars. When actual sales failed to meet this optimistic projection, Meier failed to make as great a profit as it had initially anticipated.

After Meier had been in business for two years, Infiniti implemented its strategy of creating two dealerships in northern Dallas by establishing Crest as a new Infiniti dealer in Plano, approximately 8 to 10 miles from Meier. This strategy was part of a "pre-launch plan" which Infiniti had conceived prior to establishing the Meier dealership, and Meier was aware of the "pre-launch plan" during its initial negotiations with Infiniti. Crest was to be a smaller dealership, designed for a yearly sales volume of 600 new cars. When Crest applied for an Infiniti license in the northeast portion of the Dallas market, Meier protested Crest's application.

## DISCUSSION

On appeal from the Board's decision to grant Crest a license, Meier argues thirteen points of error which present three principal arguments: (1) the Board failed to make proper underlying findings of fact to support its conclusions with substantial evidence; (2) the Board based its decision on irrelevant, non-statutory criteria and failed to make all of the ultimate findings of fact as statutorily required; and (3) the Board erred in refusing to grant Meier's motions both for continuance and to reopen the evidentiary hearing. In concluding that there was "good cause" to grant the license, the Board adopted the Hearing Examiner's Proposal for Decision in its entirety, including the Examiner's findings of fact and conclusions of law.

### Substantial Evidence

■ Meier challenges the sufficiency of the evidence as presented in the Examiner's findings of fact and argues that these fact-findings do not support the Examiner's conclusions. This Court *presumes* that the Board's order is supported by substantial evidence, and Meier has the burden to overcome this presumption. *See Meador–Brady Management Corp. v. Texas Motor Vehicle Com'n*, 833 S.W.2d 683, 688 (Tex.App.–Austin 1992), *rev'd on other grounds*, 866 S.W.2d 593 (Tex.1993); *City of Alvin v. Public Util. Comm'n of Texas*, 876 S.W.2d 346, 355 (Tex. App.—Austin 1993), *writ dism'd*, 893 S.W.2d 450 (Tex.1994). The Administrative Procedure Act ("APA") authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (West 1995). The evidence in the record may preponderate against the decision of the agency and nevertheless amount to substantial evidence. *Meador–Brady Management Corp.*, 833 S.W.2d at 688. The true test is not whether the agency reached the correct conclusion but whether some reasonable basis exists in the record for the agency's action. *Texas Health Fac. v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984); *Meador–Brady Management Corp.*, 833 S.W.2d at 688. We will sustain the agency's action if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Id.*

■ Points of error four, six, seven, eight, nine, ten and eleven each contain variations on Meier's argument that the Board's findings of fact do not substantially support the Board's conclusions concerning the criteria that the Texas Motor Vehicle Commission Code ("the TMVC Code") requires the Board to consider. According to the TMVC Code, the Board must make an ultimate finding of "good cause" before granting a license to an applicant for a new motor vehicle dealership whose application has been protested by an existing dealer. Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 4.06(c) (West Supp.1996). The TMVC Code sets out five criteria which must be considered in the Board's determination of good cause:

(1) whether the manufacturer or distributor of the same line-make of new motor vehicle is being adequately represented as to sales and service; (2) whether the protesting dealer representing the same line-make of new motor vehicle is in substantial compliance with that dealer's franchise agreement [1]; (3) the desirability of a competitive marketplace; (4) any harm to the protesting dealer; and (5) the public interest. *Id.*

The record here contains substantial evidence supporting the Board's ultimate conclusion that there was good cause to issue Crest a license for a new Infiniti dealership. The Board was entitled to give great weight to the testimony describing both the desirability of the buyer's ability to "cross-shop" and the synergistic effect between a greater presence in the community and more advertising. By accepting this analysis, the Board effectively answered Meier's numerous arguments on appeal that there is insufficient market demand to profitably sustain two Infiniti dealers: if the existence of another dealer will itself increase demand, then there is no need for a finding of substantial demand before granting a license for a new dealer. This analysis both addresses Meier's concern in its eighth and ninth points of error that the Board failed to properly consider the harm to Meier that might result from the granting of a new license, and it also shows that the Board made proper findings concerning the public interest and the desirability of a competitive marketplace.

■ Furthermore, the Hearing Examiner made several factfindings concerning the nature of the Dallas market for luxury cars: that the Dallas market is large and especially advantageous for luxury motor vehicle dealerships, that Infiniti tends to outsell its competitors when it is represented by an equal number of dealers as its competitors, and that Infiniti is outsold in Dallas by its competitors. These findings provide some evidentiary basis upon which the Board could have reasonably concluded, based on the underlying statutory criteria, that there was good cause for another Infiniti dealership.

■ In its fifth point of error Meier complains specifically that the Board failed to address two "critical" and "controlling" factual issues: (1) the effect of Infiniti's erroneous projections of market demand, and (2) the validity of the market analysis of John Frith, an expert who testified on behalf of Crest and Infiniti. The Board, not Meier, has sole responsibility for determining which issues are "critical" and "controlling." Findings are not required on matters that the Board did not find persuasive or on which it did not rely for support of its ultimate decision. *State Banking Board v. Valley Nat'l Bank,* 604 S.W.2d 415, 419 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *Meador–Brady Management Corp.,* 833 S.W.2d at 688. Furthermore, with regard to Meier's challenge of Frith's expert testimony, the Board may choose whether or not to accept the testimony of witnesses, expert or non-expert. *See Southern Union Gas Co. v. Railroad Comm'n,* 692 S.W.2d 137, 141–42 (Tex.App.—Austin 1985, writ ref'd n.r.e.).

We cannot conclude that *no reasonable mind* could have reached the Board's conclusion because Meier vehemently disagreed with the market analysis of Crest's expert and because Meier does not think that enough weight was accorded the issue of market demand; based on the evidence presented and in light of the statutory criteria,

---

1. This criterion was not at issue in this case.

there was substantial evidence of "good cause" to grant Crest a license. We overrule points of error four through eleven.

*Good Cause*

Meier also argues that the Board based its decision on irrelevant and non-statutory factors and, in particular, that the Board relied "solely" on Infiniti's "naked" desire to achieve greater market penetration in its determination of "good cause." Meier further argues that the Board erred in not making ultimate findings of fact as to adequacy of representation and the public interest.

■ In the first three points of error, Meier contends that the guidelines for finding "good cause" presented in section 5.02(b)(5) of the TMVC Code, which concern the termination or modification of a franchise, ought to govern the Board's evaluation of "good cause" for the purposes of section 4.06(c). According to section 5.02(b)(5), "good cause shall not be shown solely by the desire of a manufacturer, distributor, or representative for market penetration." TMVC Code § 5.02(b)(5) (West Supp.1996). We need not determine whether this particular restriction applies to section 4.06(c) because we reject Meier's contention that the Board relied *solely* on Infiniti's desire for market penetration. To the contrary, the Examiner's Proposal for Decision, adopted in its entirety by the Board, provides ample findings of fact that demonstrate the extent to which the Board considered and weighed each of the statutorily required factors at issue in this case.

■ Meier errs in labelling "market penetration" and all of the elements subsumed by this concept, such as the size of Dallas and the number of competing dealers, "non-statutory and irrelevant." In the course of making its determination concerning "good cause," the Board was entitled to include Infiniti's desire for market penetration as one element of the broader statutory requirement of considering whether or not Infiniti was adequately represented.

The Texas Motor Vehicle Commission, an agency with expertise in the area of licensing motor vehicle dealerships, is responsible for determining which factors to consider, how much weight each factor should receive, and whether in light of these factors there is "good cause" for licensing a new dealership. If the evidence as to each of the factors conflicts, the Board is the judge of the weight to be accorded to the evidence presented. *Meador–Brady Management Corp.*, 833 S.W.2d at 689. This Court will neither substitute its own judgment as to which factors the agency should consider to be the most important nor make a de novo determination of "good cause." *See* Tex. Gov't Code Ann. § 2001.174 (West 1995).

■ Meier then argues that the Board erred in failing to make ultimate findings of fact as to the issues of "adequate representation" and "the public interest." In support of this argument, Meier cites two cases concerning agency decisions where the agency "failed to consider factors that the legislature directed it to consider." *See City of El Paso v. Public Util. Comm'n of Texas*, 883 S.W.2d 179, 184 (Tex.1994); *Texas Util. Elec. Co. v. Public Util. Comm'n*, 881 S.W.2d 387, 406 (Tex.App.—Austin 1994, no writ). While these cases require the agency to *consider* all of the statutory criteria, the cases do not stand for the proposition that the agency *must make ultimate findings of fact* as to each of the factors. Rather, the logical force of the findings of underlying fact must be such that the reviewing court can fairly and reasonably say that the underlying findings support the statutorily required criteria. *Texas Health Fac. v. Charter Medical–Dallas, Inc.*, 665 S.W.2d at 451; *Texas Railroad Comm'n v. Entex, Inc.*, 599 S.W.2d 292, 298 (Tex.1980); *Texas Ass'n of Long Distance Tel. Co. v. Public Util. Comm'n of Texas*, 798 S.W.2d 875, 887 (Tex.App.—Austin 1990, writ denied). In the present case, the underlying findings must reflect that the agency considered the adequacy of representation, the desirability of a competitive marketplace, harm to the existing dealer, and the public interest. The statute only requires an *ultimate find-*

*ing* of good cause. We believe that the underlying facts found by the Hearing Examiner and adopted by the Board demonstrate that the Board properly considered each of these criteria.

Meier assails this holding in its motion for rehearing, claiming that it runs contrary to this Court's opinions in *Professional Mobile Home Transport v. Railroad Comm'n,* 733 S.W.2d 892, 901 (Tex.App.—Austin 1987, writ ref'd n.r.e.) and *Consumers Water, Inc. v. Public Util. Comm'n,* 774 S.W.2d 719, 722 (Tex.App.—Austin 1989, no writ). *Professional Mobile Home Transport* held that, when a statute directs an agency to consider subsidiary factors in making a decision, the agency "must determine these subsidiary factors and its determinations must be reasonably supported by findings of underlying or basic fact set forth in the Commission's final order." *Mobile Home Transport,* 733 S.W.2d at 901. Meier construes this language as requiring an agency's final order to include both ultimate and basic findings of fact on each statutorily required factor.

*Mobile Home Transport* held that the findings in the Commission's final order did not adequately reflect a determination as to the subsidiary factors at issue "because they either omit entirely to mention a statutory criterion *or fail to supply underlying facts that reasonably support the agency's determination on such a criterion." Id.* at 905 (emphasis added). The emphasized language implies that, in the absence of "ultimate" findings on the statutory criteria, an agency's final order can evidence consideration of statutory criteria through basic or underlying findings which support those criteria.[2] In a similar context, the supreme court determined that a final order of the Public Utility Commission reflected the agency's consideration of the statutory criteria, even though the Commission made no specific findings

couched in the language of the statutory criteria. *Goeke v. Houston Lighting and Power,* 797 S.W.2d 12, 14 (Tex.1990). By reviewing the entire order to determine whether the agency considered the statutory criteria, the court acknowledged that an agency need not make "ultimate" findings on each statutory criterion. Because in this case the Motor Vehicle Commission's findings reflect that it considered adequate representation and the public interest, we overrule the first three points of error.

*Motions for Continuance and to Reopen Evidence*

▄▄▄▄▄▄ Finally, Meier argues that the Board erred in not granting Meier's motions both for a continuance and to reopen the evidentiary hearing. The decisions of the Board on matters involving the agency's administrative docket are within the discretionary control of the hearing officer. *See Gibraltar Savs. Ass'n v. Franklin Savs. Ass'n,* 617 S.W.2d 322, 327 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). Such decisions should therefore be subject to review under the abuse of discretion standard. *See R.D. Oil Co. v. Railroad Comm'n of Texas,* 849 S.W.2d 871, 873 (Tex.App.—Austin 1993, no writ).

Meier argues that the Board's denial of its motion for continuance deprived Meier of the right to an effective cross-examination and a fair hearing because Meier did not have an opportunity to fully discredit Frith's testimony. Meier complains that Infiniti withheld from Meier information about Frith's analysis and that Infiniti made several last-minute changes to Frith's statement that Meier did not have time to analyze.

Crest and Infiniti respond that the changes to Frith's statement were minor alterations that did not affect the conclusions or the basis of Frith's analysis. Further-

---

2. Likewise, *Consumers Water* held that when an ultimate fact-finding represents a criterion the legislature has directed the agency to consider in performing its function, such ultimate finding " 'must be accompanied by a concise and explicit statement of the underlying facts supporting the finding.' " *Consumers Water,* 774 S.W.2d at 722

(citing *Texas Health Fac. v. Charter Medical–Dallas,* 665 S.W.2d 446, 451 (Tex.1984). Thus *Consumers Water* requires that the statutory criteria be supported by underlying findings; it does not, as Meier contends, require an "ultimate" finding on each statutory factor considered.

more, even if the changes were not minor, Meier did have some opportunity to question Frith concerning the changes made to his testimony, and the Hearing Examiner clearly thought that these opportunities afforded Meier sufficient time to digest the new information and to cross-examine Frith prior to the hearing.[3] Meier argued extensively against Frith's analysis at the hearing, but the Hearing Examiner simply found Frith's expertise and conclusions to be credible and persuasive after an extensive hearing during which experts on both sides of the dispute presented market studies and comparative statistics. Under these circumstances, we cannot say that the Hearing Examiner's decision not to grant a continuance was an abuse of discretion. We overrule Meier's twelfth point of error.

We also overrule Meier's thirteenth point of error because we do not believe that the Hearing Examiner abused its discretion in denying Meier's motion to reopen the evidentiary hearing. The motion to reopen was based on hearsay, and Meier did not show that the issues that the new evidence was to reveal were relevant to the factors set out in section 4.06(c). Under these circumstances, the Hearing Examiner was at liberty to deny the motion and not to disturb the findings it had made after the conclusion of an extensive evidentiary hearing.

Finding no error, we affirm the Board's decision.

**3.** The motion for a continuance at issue here was made just before the evidentiary hearing was to begin and was actually the renewal of a motion that Meier had made five days prior to the hear-

ing. The Hearing Examiner was shown the changes at the hearing on the first motion for continuance, and Frith was subsequently made available for deposition to discuss the changes.