Randy PRETZER; Scott Bossier; Bossier Chrysler–Dodge II, Inc. d/b/a Bossier Country, Appellants,

v.

The MOTOR VEHICLE BOARD and Motor Vehicle Division of the Texas Department of Transportation, Appellees.

No. 03–02–00403–CV.

Court of Appeals of Texas, Austin.

Jan. 16, 2003.

Rehearing Overruled Feb. 27, 2003.

J. Bruce Bennett, Cardwell, Hart & Bennett, L.L.P., William R. Crocker, Austin, for Appellants.

Nancy Elizabeth Olinger, Assistant Attorney General, Natural Resource Division, Austin, for Appellees.

Before Justices B.A. SMITH, PATTERSON and PURYEAR.

## OPINION

JAN P. PATTERSON, Justice.

In this case, we must decide whether appellees Motor Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation (collectively, "Board") had the statutory authority and adduced substantial evidence to sanction appellants Randy Pretzer, Scott Bossier, and Bossier Chrysler–Dodge II, Inc. d/b/a Bossier Country (collectively, "Bossier") for violations of the Texas Motor Vehicle Code ("Code"). Bossier appeals a district court judgment affirming in part, overruling in part, and reversing and remanding in part a final order of the Board, which imposed $180,000 in civil penalties for violations of sections 4.06(a)(5) and 4.06(a)(6) of the Code. We affirm the judgment of the dis-

trict court in part, reverse and render in part, and remand the cause to the district court for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Bossier Country ("dealership"), located in the rural community of Fairfield, Texas, is licensed by the Board to sell motor vehicles. Scott Bossier is the president of the dealership and owns a majority of its stock. With a background as an accountant, Scott Bossier handles financial matters of the dealership but is not involved in its day-to-day activities. In 1991, Scott Bossier placed an advertisement in a trade journal to sell the dealership, which had been losing money. Randy Pretzer, who had owned a financially troubled dealership in Washington state, answered the ad. Although Pretzer did not have enough money to buy the dealership, Scott Bossier hired him as general manager in mid–1992. As general manager, Pretzer runs the daily operations of the dealership, which include training and supervising the sales staff. In an effort to increase sales, he also put into place a seven-step sales approach, which sales staff described as "buy or die" and "very high-pressure."

On March 27, 1996, the enforcement section of the Board filed a complaint against Bossier, alleging that beginning in 1991 it had violated the Code by engaging in various fraudulent practices, including (i) submitting false and forged credit applications to potential creditors on behalf of purchasers; (ii) submitting false and forged documents in support of credit applications; (iii) forging buyers' signatures on sales contracts and altering terms of sales contracts after being signed; (iv) defrauding customers by refusing to return trade-ins before sales transactions were final; (v) defrauding customers by requiring them, as a condition of obtaining financing, to pay additional money or agree to a designated "cash price" in excess of the true price at which Bossier sold the vehicles for cash in the ordinary course of business; and (vi) making false representations to the Board about the ownership of the dealership.

The contested case hearing on the complaint was conducted from November 12 through November 25, 1996, with testimony from more than forty witnesses. On March 25, 1998, the administrative law judge ("ALJ") issued an eighty-nine-page proposal for decision ("PFD"), which included extensive findings of fact and conclusions of law. Among the conclusions of law were that Bossier "willfully defrauded retail buyers" in violation of section 4.06(a)(5) of the Code and that by "violation of any law relating to the sale, distribution, financing, or insuring of motor vehicles" it had also violated section 4.06(a)(6). See Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 4.06(a)(5), (6) (West Supp. 2003).

On July 9, 1998, the Board issued its final order, adopting all of the findings of fact and all but three of the conclusions of law (with a modification to another), and imposing civil penalties of $150,000 on the dealership, $25,000 on Pretzer, and $5,000 on Scott Bossier. The order further barred Pretzer for five years from having an ownership interest of ten percent or greater in a franchised or independent dealer, serving as general manager of a dealer, or being in charge of the business activities of a dealer. It also prohibited any dealership in which Pretzer was involved in any of the above capacities from having a franchised or independent dealer's license for five years. Finally, it ordered the dealership, Pretzer, and Scott Bossier to cease and desist from committing any additional violations of the Code.

Bossier sought judicial review of the Board's order in a Travis County district court. The district court found substantial evidence to support the finding that Bossier "willfully defrauded retail buyers" in violation of section 4.06(a)(5) of the Code but determined that the Board did not have jurisdiction to enforce section 4.06(a)(6) of the Code as to retail sales of used motor vehicles occurring before June 8, 1995. It therefore reversed the Board's conclusion that Bossier had violated section 4.06(a)(6). Further, because the Board's order based the civil penalties on several statutory violations, the district court reversed and remanded the cause to the Board for determination of civil penalties based solely on violation of section 4.06(a)(5) of the Code.

On appeal, Bossier contends in six of its eight issues that the district court erred in holding that (i) the Board had the statutory authority to impose penalties against Pretzer and Scott Bossier individually; (ii) Bossier received sufficient notice of the legal and factual bases of the complaint filed against it; (iii) there is substantial evidence to support the Board's findings that Bossier willfully defrauded retail buyers of automobiles under section 4.06(a)(5) of the Code; (iv) the Board made sufficient findings of fact to support its conclusion that Bossier violated section 4.06(a)(5); (v) the Board was not required to give Bossier notice before filing its complaint; and (vi) the Code does not violate the equal protection provisions of the United States and Texas Constitutions or the separation of powers provision of the Texas Constitution. In its two remaining issues, Bossier contends that the Board erroneously applied a "preponderance of the evidence"

standard of proof, instead of the higher "clear and convincing evidence" standard, and that the ALJ erred in denying Bossier's motion to reopen the contested case hearing.

## ANALYSIS

### I.

In its first issue, Bossier argues that the district court erred in holding that the Board has the statutory authority to impose monetary penalties and sanctions against Scott Bossier and Pretzer, individually, for violations of section 4.06(a)(5) of the Code. Because Scott Bossier and Pretzer are not "licensees,"[1] it contends that the Board has no statutory authority to sanction them for violations of the Code.

 Statutory construction is a question of law, which we review *de novo. Lopez v. Texas Workers' Comp. Ins. Fund,* 11 S.W.3d 490, 494 (Tex.App.-Austin 2000, pet. denied) (citing *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989); *Republic Western Ins. Co. v. State,* 985 S.W.2d 698, 701 (Tex.App.-Austin 1999, pet. dism'd w.o.j.)). In construing these statutes, we are mindful of the rules of statutory construction. One of the cardinal rules is that we must ascertain and give effect to the legislature's intent for the provision we are construing. *See Fleming Foods v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999); *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994); *Calvert v. Texas Pipe Line Co.,* 517 S.W.2d 777, 780 (Tex.1974). The legislature's intent should be determined by reading the language used in the particular statute and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit*

---

1. A "licensee" is a person "who holds a license or general distinguishing number issued by the Board" under the terms of the Code or chapter 503 of the transportation code. Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 1.03(20) (West Supp.2003). Here, the licensee is Bossier Country.

*Abuse,* 982 S.W.2d 371, 380 (Tex.1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n,* 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.,* 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied); *City of Austin v. Quick,* 930 S.W.2d 678, 687 (Tex.App.-Austin 1996), *aff'd,* 7 S.W.3d 109 (Tex.1998) (citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981)); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25 (6th ed.2000) (stating that there is generally an inference that omissions from a statute are intentional). Furthermore, construction of a statute by an administrative agency charged with its enforcement is entitled to serious consideration, as long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *see Ford Motor Co. v. Motor Vehicle Bd.,* 21 S.W.3d 744, 762 (Tex.App.-Austin 2000, pet. denied).

■ We will first address the purposes of the Code and the Board's overall powers. The Board "has broad power to regulate all aspects of the distribution and sale of motor vehicles." *American Honda Motor Co., Inc. v. Texas Dep't of Transp.,* 47 S.W.3d 614, 624 (Tex.App.-Austin 2001, pet. denied); *see* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 3.01(b) (West Supp.2003). The purpose of the Code is "to exercise the state's police power to insure a sound system of distributing and selling motor vehicles through licensing and regulating manufacturers, distributors, converters, and dealers of those vehicles ... in order ... to prevent frauds, unfair practices,

discriminations, impositions, and other abuses" that "affect[ ] the general economy of the State and the public interest and welfare of its citizens." Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 1.02. The Code creates the Board, *id.* § 2.01(a), and confers upon it "the general and original power and jurisdiction to regulate all aspects of the distribution, sale, and leasing of motor vehicles." *Id.* § 3.01(a). The Code further provides that "[u]nless otherwise specifically provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act." *Id.* § 3.01(b). To accomplish this purpose, the Code authorizes the Board: to administer the Code's provisions; to establish licensee qualifications; to ensure that motor vehicle distribution, sale, and leasing complies with the Code and the Board's rules; to provide for compliance with warranties; and to prevent fraud, unfair practices, discriminations, impositions, and other abuses occurring with motor vehicle distribution and sale. *Id.* § 3.02; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 224 (Tex.2002). And, the Code is to be "liberally construed so as to effectuate its purposes." Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 1.04.

The question then becomes: does section 4.06(a)(5) give the Board the power to prevent "any person" from "willfully defrauding" a buyer? Bossier argues that the legislature has not expressly authorized the Board to sanction non-licensees for violating section 4.06(a)(5). It urges that this section pertains only to licensees because it falls under the title of "Sanctions; denial, revocation, or suspension of license." *Id.* § 4.06. The Board contends that reading several Code provisions together gives the Board this authority. We agree with the Board.

The Board has broad enforcement powers to prevent fraud in the sale of motor vehicles. The Board has the general power to "prohibit and regulate acts and practices in connection with the distribution and sale of motor vehicles." *Id.* § 3.03(a). Section 1.02 gives the Board power to enforce the Code "to other persons ... to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens." *Id.* § 1.02. The Board may levy a civil penalty or issue a cease and desist order against "any person" who violates the Code. *Id.* §§ 6.01(a), 6.01A. "Person" in the Code "means a natural person, partnership, corporation, ... or any other legal entity," encompassing both licensees and non-licensees. *Id.* § 1.03(29).

■ Preventing fraud by any person comports with the Code's overall scheme to protect the public by regulating "all aspects of the distribution and sale of motor vehicles." *Id.* § 3.01(b). Viewing the Code's provisions together, we believe that the legislature intended that the Board be authorized to sanction any person for "willfully defrauding any buyer." For the Board not to be able to penalize non-licensed employees would render its powers to "prevent *frauds* ... and other abuses of our citizens" meaningless. *Id.* § 1.02 (emphasis added). This does not create any new enforcement powers but instead only ensures that the Board may enforce the Code as to employees of licensees. Therefore, we conclude that the legislature has authorized the Board to enforce section 4.06(a)(5) against non-licensees. Accordingly, we hold that the district court did not err in holding that the Board had authority to levy civil penalties against Scott Bossier and Pretzer for violation of section 4.06(a)(5). We overrule this part of Bossier's first issue.

■ Bossier contends further that the legislature has not given the Board the power to "expel" non-licensees from the motor vehicle distribution industry. The Board's order barred Pretzer for five years from having an ownership interest of ten percent or greater in a franchised or independent dealer, serving as general manager of a dealer, or being in charge of the business activities of a dealer. It also prohibited any dealership in which Pretzer was involved in any of the above capacities from having a franchised or independent dealer's license for five years. Bossier contends that the Board, by imposing these penalties, took a position that is inconsistent with an earlier Board decision, in which the director of the Board stated at a hearing that "it was a shame" that the Board could not take the license of an individual. *See* Tex. Dep't of Transp., *In the Matter of License of BWB Automotive, L.P.*, Docket No. 00–0445–ENF (Motor Vehicle Bd. May 24, 2001) (agreed final order).

The powers of the Board are explicit: It has the power to levy civil penalties, *see* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 6.01(a), and to deny a license application, or revoke or suspend an existing license, *see id.* § 4.06. The Board may even deny or revoke a license because of an action of "an officer, director, ... or other person acting in a representative capacity for a licensee" that would be cause for denying or revoking a license. *Id.* § 4.06(a)(7).[2] But no section of the Code gives the Board the power to bar a person or entity from acquiring an ownership interest or applying for a license. In fact, the Code has due process protections in place for license applicants: "[n]o license shall be denied ... except on order of the Board *after a hearing*." *Id.* § 4.06(g) (emphasis added).

**2.** It is worth noting that the Board did not invoke this provision in its complaint.

Agencies have only those enforcement powers expressly delegated to them by the legislature. *See Harrington v. Railroad Comm'n,* 375 S.W.2d 892, 895 (Tex.1964) (determining that the "sanctions and penalties ... expressly provided by the Legislature are exclusive" and that the Railroad Commission had no "power to impose different or additional sanctions or penalties of its own devising"); *Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n,* 855 S.W.2d 792, 798 (Tex. App.-Austin 1993, no pet.) (declining to find implied enforcement powers under the Code). "An agency may not erect and exercise a new or additional power, or a power that contradicts a statute, from a specific power, function, or duty expressly delegated by that statute," nor may an agency exercise a new power solely for the administrative purposes of expediency. *Lakeshore Util. Co. v. Texas Natural Res. Conservation Com'n,* 92 S.W.3d 556, at 564 (Austin Sept. 12, 2002, pet. granted) (internal citations omitted).

The Board has no express power to bar a person or entity from acquiring an ownership interest or applying for a license. Therefore, we conclude that the district court erred in holding that the Board had the power to limit Pretzer's employment in the motor vehicle industry or to prevent Pretzer or any entity in which he holds a ten percent or greater interest from applying for a license for five years. We reverse the district court's judgment upholding the Board's power and render judgment in favor of Pretzer on this issue.

## II.

Bossier asserts in its third issue that the district court erred in holding that there is substantial evidence to support the Board's findings that Bossier "willfully defrauded" retail buyers in violation of section 4.06(a)(5) of the Code. It contends that there is no evidence to support the findings that Bossier acted with the requisite intent to: falsify or forge credit documents, forge or alter retail installment contracts, refuse to return trade-ins, require buyers to pay more than the "true" price for a vehicle, or that Pretzer and Scott Bossier directly participated in any of these violations. It further argues that the Board had no jurisdiction over used vehicle sales before June 8, 1995, and thus that the Board had no power to punish Bossier for alleged violations of section 4.06(a)(5) involving retail sales of used vehicles.

The district court reviews final actions of the Board under the substantial evidence rule. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp.2003). Under this rule, the district court determines whether the Board's findings were supported by substantial, probative, reliable evidence found in the whole record such that reasonable minds could have reached the conclusion that the Board must have reached to justify its action. *See Suburban Util. Corp. v. Public Util. Comm'n,* 652 S.W.2d 358, 364 (Tex.1983); *Ford Motor Co.,* 21 S.W.3d at 756. The district court presumes that the Board's order is supported by substantial evidence, and the appealing party has the burden of overcoming this presumption. *See Sportscoach Corp. v. Eastex Camper Sales, Inc.,* 31 S.W.3d 730, 733 (Tex.App.-Austin 2000, no pet.). The true test is not whether the agency reached the correct conclusion but "whether some reasonable basis exists in the record for the action taken by the [Board]." *State v. Public Util. Comm'n,* 883 S.W.2d 190, 204 (Tex.1994); *accord Meier Infiniti Co. v. Motor Vehicle Bd.,* 918 S.W.2d 95, 98 (Tex.App.-Austin 1996, writ denied).

Under the substantial evidence rule, a reviewing court may not substitute its

judgment for the judgment of the agency on the weight of the evidence on questions committed to agency discretion. *See* Tex. Gov't Code Ann. § 2001.174 (Tex.2000). However, a reviewing court must reverse or remand the case for further proceedings if the complaining party's substantial rights have been prejudiced because the agency's finding, inferences, conclusions, or decisions are:

 (A) in violation of a constitutional or statutory provision;

 (B) in excess of the agency's statutory authority;

 (C) made through unlawful procedure;

 (D) affected by another error of law;

 (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

 (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 2001.174(2)(A–F).

■■ In a preliminary issue, Bossier contends that the Board failed to find that Bossier, by allegedly willfully defrauding customers, acted with "an evil and malicious intent to injure," which was the definition of "willful" applied in another Board proceeding. *See* Tex. Dep't of Transp., *In the Matter of License of Bill Heard Chevrolet Corp.*, Docket No. 99–0165–ENF (Motor Vehicle Bd. Nov. 16, 2000) (final order dismissing complaint). The PFD in *Heard*, adopted wholly in the final order, cited the definition of "willful" from *Brown v. State*, 167 Tex.Crim. 621, 322 S.W.2d 626, 627–28 (1959) ("Willfully when used in a penal statute means . . . with evil intent or legal malice, or without reasonable ground for believing the act to be lawful."). Here, the Board first contended in its brief that in administrative cases, the second definition in *Brown*—"without reasonable ground for believing the act to be law-

ful"—should apply. *Brown*, 322 S.W.2d at 628. In a letter brief after oral argument, the Board asserted that there was substantial evidence to support the "willfully defrauded" finding under either definition. We agree with the Board's latter argument.

Although the ALJ did not define "willful" in her PFD, she supported the "willfully defrauding" finding with substantial evidence under either definition. The underlying findings in the PFD discussed specific instances of: falsifying income on credit applications, forging signatures on credit applications, impermissibly including promissory notes in down payments, forging a signature on a retail installment contract, switching names on credit applications, refusing to return trade-in vehicles, and increasing cash prices of vehicles after the customers had agreed to lower prices. The PFD also discussed Pretzer's and Scott Bossier's involvement in various violations. For example, Pretzer worked closely with sales staff on sales transactions. Scott Bossier was aware of and authorized the use of promissory notes, which the ALJ found was part of a scheme "to get customers qualified for more expensive vehicles than those for which they would otherwise qualify, thereby increasing the sales and profits of Bossier Country, and intentionally harming customers." Bossier argued that employees acted without authority, which the ALJ found not credible. But, she concluded, "even if these actions were committed by employees without authority, that does not remove the obligation of Bossier Country and its management to supervise their employees and prevent such actions from occurring."

Thus, the underlying findings showed that Bossier acted without reasonable grounds for believing its acts to be lawful

and further showed several instances of an intent to injure customers through falsification, forgery, and bait-and-switch schemes. Therefore, we hold that there was substantial evidence to support the "willfully defrauded" finding under either definition of "willful." For the same reasons, we hold that substantial evidence supports the findings that Bossier: falsified or forged credit documents, forged or altered retail installment contracts, refused to return trade-ins, required buyers to pay more than the "true" price for a vehicle, and that Pretzer and Scott Bossier directly participated in at least some of these violations.

■■■ We now must determine whether the Board had jurisdiction to sanction Bossier for section 4.06(a)(5) violations that involved retail sales of used vehicles before June 8, 1995. Section 4.06(a)(5), both before and after this date, has prohibited "willfully defrauding any buyer." The district court found, based on the Board's interpretation, that section 4.06(a)(5) applied to new and used vehicle transactions. The district court, however, found that the Board had no jurisdiction for violations of section 4.06(a)(6), because the statute before June 8, 1995 prohibited "violation of any law relating to the sale, distribution, financing, or insuring of *new* motor vehicles" (emphasis added).[3]

Bossier argues that the entire Code before June 8, 1995 applied only to sales of new motor vehicles. It cites the "Policy and Purpose" section, which addressed regulation of "the distribution and sale of *new* motor vehicles."[4] It also refers to the "Jurisdiction" section, which gave the Board "general and original power and jurisdiction to regulate all aspects of the distribution and sale of *new* motor vehicles."[5] After this date, the legislature removed "new" from both of these sections. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), §§ 1.02, 3.01(b) (West Supp.2003). The only case having analyzed this issue held that the earlier version of the Code applied only to new vehicles. *See Casa Ford, Inc. v. Ford Motor Co.*, 951 S.W.2d 865, 871–72 (Tex.App.-Texarkana 1997, pet. denied) (noting that several sections of the earlier version of the Code mentioned new vehicles but no sections mentioned used vehicles). The Board argues that the *Casa Ford* holding was overly broad and did not discuss section 4.06(a)(5). Additionally, the Board urges that we follow the Board's interpretation that section 4.06(a)(5) applies to both new and used vehicle transactions because it "best accords with the purposes" of the Code in prohibiting a dealer from "willfully defrauding any buyer."[6]

In *Casa Ford*, as here, a party argued that a provision of the earlier version of the Code should apply to both new and

3. Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 14, 1995 Tex. Gen. Laws 2887, 2893 (amended 2001) (current version at Tex.Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(a)(6)).

4. Act of May 20, 1987, 70th Leg., R.S., ch. 147, § 1, 1987 Tex. Gen. Laws 1781, 1781–82 (amended 1995) (current version at Tex.Rev. Civ. Stat. Ann. art. 4413(36), § 1.02) (emphasis added).

5. Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 9, 1989 Tex. Gen. Laws 4653, 4658 (amended 1995) (current version at Tex.Rev.

Civ. Stat. Ann. art. 4413(36), § 3.01(b)) (emphasis added).

6. The Board urges that we apply its interpretation from an earlier decision determining that the Board had jurisdiction over violation of section 4.06(a)(5) involving a used vehicle transaction. *See* Tex. Dept. of Transp., *In the Matter of the License of Spiers Imports, Inc.*, Docket No. 90–101 (Motor Vehicle Comm'n. Dec. 6, 1990) (final order). This decision does not appear in the record before us, and we may not consider it.

used vehicles. *See Casa Ford,* 951 S.W.2d at 872. Our sister court in Texarkana examined several provisions of the Code and determined that the overall statutory scheme applied only to new vehicles. *Id.* at 871–72. The court considered fully and detailed instances of the deletion of the word "new" from the Code. Significantly, "new" was deleted from section 1.02, "Policy and Purpose,"[7] and from sections 3.01 concerning jurisdiction and 3.02 concerning duties.[8] *Id.* at 872. The court then determined that although "elimination of the word 'new' in some sections is open to varying interpretations ... the evidence indicates that [the Code] applie[d] only to transactions involving new vehicles" before June 8, 1995. *Id.*

■ The Board contends that *Casa Ford* should not control because the Board was not a party to the case and did not have an opportunity to "defend" its interpretation of the statute. The Board is not the sole source of interpretation of the Code, nor does its absence from a case negate a court's interpretation. We have been cited to no legislative history indicating the legislature's intent and find the thorough statutory analysis in *Casa Ford* persuasive. We agree with the *Casa Ford* court that attempting to construe one section "to be anomalous from the rest" of the Code does not comport with the well-settled rule of statutory construction that we will not interpret a provision in isolation, especially if that interpretation is out of harmony with the rest of the statute. *See id.; see also Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.,* 997 S.W.2d 298, 305 (Tex.App.-Austin 1999, pet. denied) (deferring to an agency's interpretation if "that reading is in harmony with the rest of the statute").

■ The Board further argues that Bossier's interpretation of section 4.06(a)(5) is inconsistent with the rationale behind the Code because it would prohibit a new vehicle dealer from willfully defrauding a purchaser of a new vehicle but not from willfully defrauding a purchaser of a used vehicle. We are satisfied that this is one of the reasons that the statute was changed—or clarified—in 1995. Because this uncertainty exists only with respect to sales of vehicles before June 8, 1995, it should not continue to vex those who seek to interpret it. We are satisfied, based on the *Casa Ford* analysis, that deletion of "new" broadened the statute. We are also mindful that when a statute involves a penalty, we should construe the statute narrowly to give parties fair notice of what constitutes unlawful conduct. *See Cain v. State,* 882 S.W.2d 515, 519 (Tex. App.-Austin 1994, no writ) (discussing rules of statutory construction in the context of civil liability).

We conclude that section 4.06(a)(5) did not apply to retail sales involving *only* used vehicles before June 8, 1995. Accordingly, we sustain Bossier's subissue that the district court erred in holding that the Board had jurisdiction to sanction Bossier for any retail sales involving only used vehicles before June 8, 1995 that may have violated section 4.06(a)(5). We hold, however, that the Board did have jurisdiction to sanction Bossier for any retail sales of new vehicles that may have violated section 4.06(a)(5). We therefore affirm the district court's judgment remanding the redetermination of civil penalties to the Board. We remand the cause to the district court with instructions to remand the redetermination of penalties to the Board, in accordance with this opinion.

7. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 1, 1995 Tex. Gen. Laws 2887, 2887.

8. *See id.* at §§ 4, 5, 1995 Tex. Gen. Laws at 2890–91.

### III.

In its fourth issue, Bossier contends that the district court erred in holding that the Board made the necessary ultimate and basic findings required by the Texas Administrative Procedure Act ("APA"). Bossier argues specifically that the Board violated the APA and the Code "by making no basic or underlying findings identifying the number of buyers willfully defrauded, the names of buyers involved, the nature of the involvement of Pretzer and Scott Bossier, and the number of acts that violated section 4.06(a)(5)." The APA requires that final decisions "must include findings of fact and conclusions of law, separately stated." Tex. Gov't Code Ann. § 2001.141(b) (West 2000). Under the Code, an order or decision shall: "(1) include a separate finding of fact with respect to each specific issue the board is required by law to consider in reaching a decision; (2) set forth additional findings of fact and conclusions of law on which the order or decision is based; and (3) give the reasons for the particular actions taken." Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 3.07(a) (West Supp.2003). The Board has latitude in how it states findings of fact:

> There is no precise form for an agency's articulation of underlying facts, and courts will not subject an agency's order to some "hypertechnical standard of review." What is important is that the findings serve the overall purpose evident in the requirement that they be made—i.e., they should inform the parties and the courts of the basis for the agency's decision so that the parties may intelligently prepare an appeal and so that the courts may properly exercise their function of review.

*Goeke v. Houston Lighting & Power Co.,* 797 S.W.2d 12, 15 (Tex.1990) (citations omitted); *see also Gene Hamon Ford,* 997 S.W.2d at 311.

The Board adopted almost all of the PFD, including its forty-five findings of fact and all but three conclusions of law (with a modification to another conclusion). The first conclusion of law found Pretzer individually liable because he "participated directly in the activities of Bossier Country." Finding of fact thirty-one supported this statement, finding that "Mr. Pretzer participated in the activities of Bossier Country, including the alleged violations, and directed its day-to-day operations." Further support came in the narrative portion of the PFD, also adopted by the Board, which discussed testimony from at least five witnesses about Pretzer's extensive involvement in the dealership and alleged violations. Similarly, the second conclusion of law found Scott Bossier individually liable because he was "aware and approved of the activities of Bossier Country." Finding of fact thirty stated that "Mr. Bossier was aware and approved of the use of promissory notes, dealer rebates, and post-it notes on credit applications." The narrative portion of the PFD supported these findings, with testimony from at least two witnesses about Scott Bossier's awareness of the fraudulent practices.

Furthermore, the third conclusion of law found that

> Bossier Country willfully defrauded retail buyers in violation of TMV Code § 4.06(a)(5) through the submission of false and forged credit applications, the submission of false and forged documents in support of credit applications, by forging and altering the terms of retail installment contracts after they had been signed, by refusing to return trade-in vehicles before a retail installment contract had been signed, and requiring customers to agree to a cash

price in excess of the true price at which the vehicles could be acquired for cash in the ordinary course of business.

Findings of fact ten through twenty-eight listed specific alleged violations with the names of the customers involved. Other findings of fact discussed employees' actions. Additionally, all of these findings contained references to the hearing transcript, and the record amply supports the findings.

We will not subject the Board's findings to a "hypertechnical standard of review." *Goeke*, 797 S.W.2d at 15. The findings more than adequately informed Bossier of the basis for the Board's decision so that it could intelligently prepare an appeal. *Id.* Therefore, we conclude that the district court did not err in holding that the Board made the necessary ultimate and basic findings required by the APA and overrule Bossier's fourth issue.

### IV.

In its second and fifth issues, Bossier complains of inadequate notice of the charges against it. In the second issue, Bossier argues that the district court erred in holding that Bossier received sufficient notice of the legal and factual bases of the complaint. Focusing on the sufficiency of the underlying factual bases, it contends that the Board's complaint was deficient because it did not give details about the allegedly fraudulent conduct, such as names of buyers, dates, and numbers of incidents.

■ The Code adopts the contested-case notice requirements of the APA. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 3.08(a). Under the APA, any contested case notice must give a short, plain statement of the matters asserted. Tex. Gov't Code Ann. § 2001.052 (West 2000). In other words, "[a]n agency must ... sufficiently identify the facts or evidence which

it intends to prove at the hearing so that a party may have a meaningful opportunity to prepare to defend." Ronald L. Beal, *Texas Administrative Practice and Procedure* § 6.2.3 (1997) (citing *Bowman v. Texas State Bd. of Dental Exam'rs*, 783 S.W.2d 318, 320–21 (Tex.App.-Austin 1990, no writ); *Texas State Board of Pharmacy v. Seely*, 764 S.W.2d 806, 814 (Tex.App.-Austin 1988, writ denied)). The administrative code requires that a notice of an adjudicative hearing before the Board give a "clear and concise factual statement sufficient to inform the respondent with reasonable definiteness of the type of acts or practices alleged to be in violation of the code." 16 Tex. Admin. Code § 101.42 (2002).

■ Bossier argues that license revocation or suspension proceedings have higher due process requirements than other contested-case proceedings. In hearings involving license revocation, suspension, or annulment, however, the notice must only state the "facts or conduct alleged to warrant the intended action." Tex. Gov't Code Ann. § 2001.054(c)(1) (West 2000). This requirement is almost indistinguishable from the general notice requirements under section 2001.052.

Citing the applicable statutes, the original complaint sets forth six allegations, including that, beginning in 1991, Bossier submitted false and forged credit applications to potential creditors, forged buyers' signatures on sales contracts, and defrauded customers by altering sales prices of vehicles. Bossier filed an application for more "definite and detailed" statement, asking for details about specific acts, including dates and the names of customers and creditors involved. The Board's response listed by allegation the names of customers involved, specific allegations, and names of dealership personnel in-

volved. Upon Bossier's objection that the response was inadequate, the ALJ concluded that the response gave Bossier adequate notice and that the detailed information that Bossier sought was "more properly the subject of discovery." Bossier argues that thus it was "blindsided" at the contested case hearing because the complaint and response to the application for more definite and detailed statement did not list specific instances, creditors, and dates of transactions. It contends, for instance, that a list of names of customers was insufficient because some of the customers had purchased more than one vehicle from the dealership.

Bossier compares its lack of notice to another Board case, *In the Matter of the License of Neal Swanson*, in which the Board found that Swanson did not receive adequate notice because he did not receive dates of alleged violations. Texas Dep't of Transp., *In the Matter of the License of Neal Swanson*, Docket No. 97–271 (Motor Vehicle Bd. Feb. 10, 2000) (final order dismissing complaint). In *Swanson*, the ALJ determined that the Board's amended complaint was "gamesmanship and nearly disingenuous," still providing no factual bases for the complaint. Here, the Board responded to Bossier's motion for more definite statement with specific facts: names of customers involved, specific allegations, and names of dealership personnel involved.

We conclude that the Board's complaint and response constitute "notice of facts or conduct that allegedly warrant license suspension or revocation," Tex. Gov't Code Ann. § 2001.054(c)(1), that was "sufficient to inform [Bossier] with reasonable definiteness of the type of acts or practices alleged to be in violation of the code." 16 Tex. Admin. Code § 101.42.

Thus, we hold that the district court did not err in holding that Bossier received

sufficient notice of the legal and factual bases of the complaint filed against it by the Board. We overrule Bossier's second issue.

Bossier contends in its fifth issue that the district court erred in holding that the Board was not required to give Bossier notice before filing the complaint. Statutory construction is a question of law, which we review *de novo*. *Lopez*, 11 S.W.3d at 494. Section 2001.054(c)(1) of the government code states that a "revocation, suspension, annulment, or withdrawal of a license is not effective unless, before institution of state agency proceedings . . . the agency gives notice by personal service or by registered or certified mail to the license holder of facts or conduct alleged to warrant the intended action." Tex. Gov't Code Ann. § 2001.054(c)(1).

Bossier admits that it is asking this Court to overrule *Guerrero–Ramirez v. Texas State Board of Medical Examiners*, which it urges "is contrary to the express wording of section 2001.054." 867 S.W.2d 911 (Tex.App.-Austin 1993, no writ). In *Guerrero–Ramirez*, we held that section 2001.054 "does not require any notice before the complaint is filed . . . but rather that the complaint itself adequately inform the licensee of the subject of the adjudicative hearing." *Id.* at 918. Bossier implies that *Guerrero–Ramirez* is without merit because the Texas Supreme Court has not reviewed its holding. In keeping with the *Guerrero–Ramirez* holding, we conclude that Bossier received notice by complaint and was not otherwise entitled to pre-complaint notice. Therefore, the district court did not err in its ruling that Bossier was not entitled to pre-complaint notice. We overrule Bossier's fifth issue.

## V.

In its sixth issue, Bossier argues that the Board erred by applying a

"preponderance of the evidence" standard of proof instead of a "clear and convincing evidence" standard because a license revocation proceeding requires a higher standard of proof. We disagree. The purpose of the agency proceeding was to enforce civil statutes. In civil cases, "[n]o doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence." *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209 (1950). Texas applies the clear and convincing evidence standard to civil matters only in extraordinary circumstances, such as civil commitment hearings or involuntary termination of parental rights. *See, e.g.,* Tex. Health & Safety Code Ann. § 574.034(a) (West Supp.2003) (civil commitment); Tex. Fam.Code Ann. § 161.001 (West 2002) (termination of parental rights); *see also Ellis County State Bank v. Keever,* 888 S.W.2d 790, 792 & n. 5 (Tex.1994). Moreover, we are guided by other license revocation proceedings that require only a preponderance of the evidence standard. *See, e.g.,* Tex. Gov't Code Ann. § 466.155(c) (West Supp.2003) (revocation of license of state lottery sales agent); *Drake v. State,* 488 S.W.2d 534, 538 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.) (disbarment of attorney). Therefore, we hold that the Board did not err in applying a "preponderance of the evidence" standard of proof and overrule Bossier's sixth issue.

### VI.

Bossier contends in its seventh issue that the district court erred in refusing to hold that the Code violates equal protection of the laws under the United States and Texas Constitutions. *See* U.S. Const. amend. 14, § 1; Tex. Const. art. I, § 3. It further argues that the Code violates the separation of powers provision of the Texas Constitution by impermissibly vesting judicial power in an administrative agency without the right to a jury trial. *See* Tex. Const. arts. I, § 15; II, § 1; V, § 10.

■ Because the constitutionality of a statute raises a question of law, we review this issue *de novo. See Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex.1995). In determining the constitutionality of a statute, we begin with a presumption that it is constitutional. *Barshop v. Medina County Underground Water Conserv. Dist.,* 925 S.W.2d 618, 629 (Tex.1996); *Rylander v. 3 Beall Bros. 3, Inc.,* 2 S.W.3d 562, 566 (Tex.App.-Austin 1999, pet. denied). Courts are to presume that "the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995).

■ Bossier contends that the Code violates equal protection of the laws, without a rational basis, by allowing only substantial evidence review in district court after the Board's determination of a licensee's status, whereas licensees in some other professions, such as attorneys, have the option of a *de novo* trial in district court. *Compare* Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 7.01(a) (substantial evidence review), *with* Tex. Gov't Code § 81.072(b)(7) (administrative system, including substantial evidence review, as an alternative to trial in district court). Because Bossier does not distinguish between state and federal constitutions for equal protection analysis, we will not discuss them separately. *See Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 264 (Tex.1994). In the absence of a need for heightened scrutiny, as is required, for example, when analyzing a statute that discriminates on the basis of race or gender, we analyze an equal protection chal-

lenge under rational basis review. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 83–84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Under rational basis review, a statute is presumed constitutional as long as it is rationally related to a legitimate governmental purpose. *Owens Corning v. Carter,* 997 S.W.2d 560, 580 (Tex.1999).

■■■■■ The default for appeal from an administrative decision is substantial evidence review. *See* Tex. Gov't Code Ann. § 2001.174 (West 2000). The right to a trial *de novo,* on the other hand, must be specifically stated in the statute. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 571 S.W.2d 503, 508 (Tex.1978). We will not disturb the legislature's determination not to impose a right to trial *de novo* in the Code. The lack of a trial *de novo* in the Code is rationally related to a legitimate governmental purpose, which includes conservation of judicial resources. Furthermore, the APA's contested case procedures and substantial evidence review under the APA provide a "full panoply of procedural safeguards." *Southwestern Bell Tel. Co.,* 571 S.W.2d at 507. Accordingly, we hold that the Code, in providing only substantial evidence review, does not deny equal protection of the laws under the United States and Texas Constitutions.

■■■■■ Bossier also contends that the Board's ability to levy a civil penalty under section 6.01 impermissibly vests judicial power in an administrative agency, thus violating the separation of powers doctrine. *See* Tex. Const. art. II, § 1; Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 6.01. In addition, it argues that a party charged with a civil penalty has the right to a *de novo* jury trial under the Texas Constitution. *See* Tex. Const. arts. I, § 15; V, § 10. These contentions lack merit. Article I, section 15 of the Texas Constitution preserves a right to trial by jury only for those actions,

or analogous actions, available at the time that the constitution of 1876 was adopted. *Barshop,* 925 S.W.2d at 636; *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 450 (Tex.1993). The Board's assessment of penalties under the Code is not an action, or analogous action, to those tried to a jury at the time that the constitution of 1876 was adopted. Further, a right to trial by jury does not attach to appeals from administrative decisions. *Texas Ass'n of Bus.,* 852 S.W.2d at 450. Indeed, parties do not have an automatic right to be heard in district court; "jurisdiction may be conferred by [the Texas Constitution] or other law on some other court, tribunal, or *administrative* body." Tex. Const. art. V, § 8 (emphasis added).

■■■■ Concerning the Board's alleged exercise of judicial power:

An administrative agency is not a "court" and its contested-case proceedings are not lawsuits, no matter that agency adjudications are sometimes referred to loosely as being "judicial" in nature. Agency adjudications do not reflect an exercise of the judicial power assigned to the "courts" of the State in Tex. Const. Ann. art. V, § 1; they are simply executive measures taken in the administration of statutory provisions.

*Beyer v. Employees Ret. Sys.,* 808 S.W.2d 622, 627 (Tex.App.-Austin 1991, writ denied). The Board's ability to levy a civil penalty is not an exercise of judicial power and thus does not violate the separation of powers doctrine. Therefore, we conclude that the ability of the Board to levy a civil penalty, without availability of a trial *de novo,* does not violate the separation of powers provision of the Texas Constitution. Accordingly, we hold that the district court did not err in its ruling that section 6.01 of the Code is constitutional and overrule Appellant's seventh issue.

## VII.

In its eighth issue, Bossier contends that the ALJ erred in denying its motion to reopen the evidentiary hearing. We review the ALJ's decision under an abuse of discretion standard. *Meier Infiniti Co.*, 918 S.W.2d at 101 ("The decisions of the Board in matters involving the agency's administrative docket are within the discretionary control of the hearing officer."). Factors to consider in a motion to reopen are: whether the evidence in support of the motion to reopen is "material, relevant, and decisive," whether reception of such evidence will cause any undue delay, and whether refusal to reopen will do an injustice. *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex.App.-Dallas 1984, no writ). The moving party must show due diligence in procuring the new evidence. *Id.*

Bossier sought to reopen the evidence on the ground that "one-third of the enforcement section witnesses had acted in a manner that was totally inconsistent with the testimony that they gave at the hearing" by returning to the dealership's employment, becoming dealership employees, or buying vehicles from or shopping at the dealership. The Board counters that this information is not decisive and only demonstrates that the witnesses were not motivated by personal animosity when they testified. We agree and hold that the ALJ did not abuse her discretion in denying Bossier's motion to reopen. Accordingly, we overrule Bossier's eighth issue.

### CONCLUSION

We hold that the Board had the statutory power to levy civil penalties against non-licensees Scott Bossier and Pretzer for violations of section 4.06(a)(5) involving retail sales of new vehicles. We conclude, however, that the district court erred in holding that the Board had the ability to levy civil penalties against Bossier for violations of section 4.06(a)(5) involving retail sales of used vehicles alone before June 8, 1995. Accordingly, we remand this cause to the district court, with instructions to remand redetermination of civil penalties to the Board in accordance with this opinion. We further hold that the Board did not have the statutory power to prospectively limit Pretzer's employment in the motor vehicle industry or prevent Pretzer or any entity in which he holds a ten percent or greater ownership interest from applying for a license for five years. Accordingly, we reverse the judgment of the district court on this issue and render judgment in favor of Pretzer. Having overruled all of Bossier's remaining issues, we affirm all other portions of the judgment of the district court.